## WALTER JONES v. THE STATE.

No. 3144.    Decided June 3, 1914.

**1.—Assault to Murder—Deadly Weapon—Charge of Court.**

Where, upon trial of assault with intent to murder, the evidence showed that the instrument used was a deadly weapon in itself, and the court charged thereon and submitted the issue in a proper way, there was no error. Following Ashton v. State, 31 Texas Crim. Rep., 479, and other cases.

**2.—Same—Evidence—Deadly Weapon.**

Where, upon trial of assault to murder, the knife used was in evidence, there was no error in permitting a witness to testify that, in the hands of an ordinary man, it was a deadly weapon, etc.

**3.—Same—Evidence—General Reputation—Bill of Exceptions.**

Where defendant's reputation for truth and veracity had not been attacked by the State and was not in issue, there was no error in refusing to permit defendant to prove the same.

**4.—Same—Evidence—Letters—Hearsay.**

Upon trial of assault to murder, there was no error in refusing to permit defendant to introduce in evidence letters and certificates from third parties not witnesses, of his peaceable and law-abiding reputation, etc.

**5.—Same—Charge of Court—Requested Charges—Objections.**

Where no objections were made to the court's charge during the trial before the court's charge was read to the jury, the refusal of requested charges can not be considered on appeal; besides, the issues were not raised by the evidence. Following Byrd v. State, 69 Texas Crim. Rep., 35, and other cases.

**6.—Same—Sufficiency of the Evidence—Charge of Court.**

Where, upon trial of assault with intent to murder, and a conviction thereof, the evidence, under a proper charge of the court, sustained the conviction, there was no error.

Appeal from the District Court of Palo Pinto. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Preston Martin,* for appellant.—On question of deadly weapon: Burleson v. State, 164 S. W. Rep., 851; Melton v. State, 30 Texas Crim. App., 273; Howard v. State, 18 id., 348; Hardy v. State, 36 Texas Crim. Rep., 400.

On question of general reputation: Phillips v. State, 19 Texas Crim. App., 158.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of general reputation: Britt v. State, 21 Texas Crim. App., 215; Rushing v. State, 25 id., 607.

On question of refusing requested charges: Berry v. State, 73 Texas Crim. Rep., 203, 163 S. W. Rep., 964, and cases cited in opinion.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for an assault with intent to murder Clyde Creighton, and his punishment assessed at the lowest prescribed by law.

Appellant was a negro waiter at a hotel in Mineral Wells. Creighton was a young white man who had supervision of the waiters and the dining room and checked and made change for guests who ate thereat. There was an early train leaving Mineral Wells and guests of the hotel desiring to leave on that train were furnished breakfast. It was both Creighton's and appellant's duty to be in the dining-room by about 6 o'clock each morning. It was Creighton's duty to prepare the coffee for these early guests. Creighton overslept himself on the morning of January 31, 1914, claiming that the call boy had failed to awaken him. When he was called, seeing that it was late, he sent word by the call boy to appellant to make the coffee. Appellant refused to do so. When Creighton reached the dining-room, he found no coffee had been made and complained to appellant because he had not done so. More or less was said by each party about this. The State's case shows that Creighton started about his duties; that appellant picked up a very large carving knife and without Creighton's seeing him, or doing anything to provoke it, appellant struck him in the back of the head a severe blow with the

handle of the knife, holding the blade in his hand for that purpose. The knife was identified, produced and introduced in evidence before the jury. In addition to its being produced, identified and introduced in evidence, the State showed by Mr. Smith, county attorney, that the knife was fifteen inches long, the handle five and one-fourth inches long, the blade nine and three-quarters inches long, and at the butt was one and one-seventh inches wide, tapering to a point. The whole knife weighed seven ounces. That as soon as appellant struck Creighton in the back of the head with the knife, Creighton turned towards him when appellant said, "I will cut your damn throat" and struck at Creighton, cut his lip with the knife and was attempting to further use the knife on him when Creighton grabbed him and began struggling with him to keep him from cutting him with the knife, and to take it away from him. In this scuffle and fight, appellant jerked the knife through Creighton's left hand, cutting three of his fingers therewith quite seriously. The cook, during the fight, succeeded in forcing the knife away from appellant and they were then separated, appellant starting off exclaiming that he would go and get his gun and kill the damn son-of-a-bitch,— Creighton.

Appellant claimed that Creighton attempted to get this knife when he beat him to it and that he then struck him in the head to make him desist and then the struggle for the possession of the knife began. All the other eyewitnesses,—three of them,—said Creighton made no attempt at any time to get the knife at first, but only to protect himself from being killed therewith by appellant after appellant began the assault upon him with the knife.

The court told the jury what was a deadly weapon in a charge that has uniformly been approved by this court. Without any doubt, the knife, testified to by several witnesses as being the one with which the assault was committed, was a deadly weapon per se. Ashton v. State, 31 Texas Crim. Rep., 479; Walters v. State, 35 S. W. Rep., 652; Luttrell v. State, 70 Texas Crim. Rep., 183, 157 S. W. Rep., 157, and cases there cited.

The court did not err in permitting the county attorney, after the said knife had been identified, to testify to its length, breadth, weight, and that it was a deadly weapon, over any objection made thereto. The court, in approving the bill on this subject, stated: "But the court only certifies that the objections were urged, not to their truth. The knife was in evidence and was a very sharp carving knife, and the witness was permitted to testify that in the hands of an ordinary man (which the proof showed the defendant to be) used to cut or slash with, it was a deadly weapon. In the opinion of the trial court the specific place on the person that the blow took effect or whether it actually inflicted a battery at all or not is immaterial, provided defendant was near enough to do so and made the assault with the specific intent to kill."

Neither did the court commit any error in refusing to permit appellant to prove by several witnesses that his reputation for truth and

veracity was good, the court, in allowing the bill on the subject, stating: "That the court permitted defendant to prove that his general reputation as a peaceable and quiet and law-abiding man was good, and that his reputation was not that of a violent and dangerous man and was not that of a quarrelsome and troublesome man. But the State did not attack the defendant's general reputation for truth and veracity and did not put that reputation in issue. The defendant was not a stranger in the county but had lived in it for seven years, and therefore was no exception to the general rule which does not permit one to (offer) suffer his general reputation for truth until it is attacked or put in issue by the opposite party. The court does not certify to the truth of the things stated in the bill under the head of defendant's object and purpose for offering the testimony."

Nor did the court commit any error in refusing to permit him to introduce some letters and certificates from parties at Honey Grove, Texas, to the effect of his peaceable and law-abiding reputation, honesty, etc. All this was clearly hearsay.

This case was tried in March, 1914. The record shows that no objection was made to the court's charge because of either omission or commission therein.

There appears in the record some special charges requested by appellant and refused. The State objects to the consideration of each of them because it is not shown that they were presented to the judge or acted on by him, before he read his charge to the jury, and the argument of the case. Also because they are not presented in such a way as to authorize or require this court to consider them. We are inclined to believe that both the State's objections are well taken. See Act of April 5, 1913, p. 278, amending articles 735, 737 and 743 of the C. C. P. and adding article 737a; also Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884; Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; Berry v. State, 163 S. W. Rep., 964, and many other cases unnecessary to cite.

However, we have read and considered them and, in our opinion, none of them should have been given. The evidence did not raise simple assault nor accidental assault and battery, and the court did not err in refusing appellant's special charges on that subject. The evidence raised aggravated assault. The court fully charged thereon, to which there is no complaint. It also raised self-defense, which was fully charged on, to which there is no objection. The court, in the charge given, properly submitted all the issues raised by the evidence, all of which were found by the jury against appellant. The judgment is affirmed.

*Affirmed.*